IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRIPWIRE SOUTH, LLC,
1475 Highland Avenue Road
Gettysburg, PA 17325
Plaintiff,

v.

JOHANN MARX,
10795 Carrara Cove
Alpharetta, GA 30022,

WILLIAM GLENN HILL, JR.,
24 Discover Way
Cleveland, GA 30528, and

STUDEBAKER DEFENSE GROUP, LLC,
a/k/a STUDEBAKER GROUP,
c/o William Glenn Hill, Jr., Chief Executive Officer
24 Discover Way
Cleveland, GA 30528,

Defendants.

Civil Action No. ______________

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiff Tripwire South, LLC ("Tripwire"), by its undersigned counsel, alleges as follows upon knowledge as to its own conduct and otherwise upon information and belief.

**NATURE OF THE ACTION**

1. This action arises from a fraud that its architects have now run, in materially identical form, against at least five counterparties since 2020. The vehicle is Studebaker Defense Group, LLC, a Delaware limited liability company that holds itself out as a defense contractor, commits to purchases it does not intend to pay for or accepts payments for goods it does not deliver, and then defaults on the resulting judgments while its insiders move its assets beyond reach.

2. In January 2024, Defendant Johann Marx, writing as "JOHANN MARX | BOARD MEMBER" and signing as "Group Executive Director," induced Tripwire to source, transport, store, insure, and guard thousands of kilograms of federally regulated explosive material. Marx committed the company to a $540,000 purchase of black powder with half of the price due at signing, invoked an urgent downstream client to accelerate Tripwire's performance, and represented that the order "would be the first of many," with interest in up to 35,000 kilograms.

3. The company never paid the deposit its own purchase order required at signing. It never paid anything at all. It attempted to cancel almost immediately although the purchase order gave it no right to cancel. And when Marx made these commitments, the enterprise he spoke for was already in default on a five-month-old federal judgment in Georgia, had already taken $500,000 from another counterparty without delivering or refunding, and was already defending a California fraud action that would end in a unanimous jury verdict against the company and two of its principals for intentional misrepresentation, false promise, and concealment.

4. Tripwire sued the contracting entity and, on May 6, 2025, obtained a default judgment of $445,165.00 in the United States District Court for the Middle District of Pennsylvania. The judgment remains wholly unpaid.

5. It is likely the entity will never pay it, because its insiders have hollowed it out. While Tripwire's suit was pending, the company's Georgia registration was revoked, leaving it with no registered agent of record. In December 2025, on unrefuted financial tracing evidence, the United States District Court for the Northern District of Georgia preliminarily enjoined Defendant William Glenn Hill, Jr., the company, and more than two dozen affiliated entities operated as his alter egos, finding a substantial likelihood of commingling, payment of personal expenses from

corporate accounts, insider transfers designed to leave the judgment debtor insolvent, conversion of funds to cryptocurrency, and diversion of the business into new, nearly identical entities.

6. Tripwire accordingly brings this action against the individuals. Count I asserts fraud in the inducement against Marx, who personally made the operative misrepresentations. Count II seeks to hold Marx and Hill liable on the existing judgment as alter egos of the entity they controlled. Count III seeks a declaration that Studebaker Defense Group, LLC is the judgment debtor identified in the Pennsylvania judgment under its trade name "Studebaker Group."

## PARTIES

7. Tripwire is a limited liability company organized under the laws of the State of Florida with its principal place of business in Pennsylvania. Tripwire supplies energetic materials, including MIL SPEC black powder.

8. Defendant Johann Marx is an individual who resides in and is a citizen of the State of Georgia, with a last known residence at 10795 Carrara Cove, Alpharetta, Georgia 30022. At all relevant times, Marx held himself out as a board member and the "Group Executive Director" of the Studebaker enterprise, corresponded from the address johann@studebaker.group, and was listed on the enterprise's website as its Chief Investment Officer and a member of its board of directors.

9. Defendant William Glenn Hill, Jr. ("Hill") is an individual who resides in and is a citizen of the State of Georgia, and may be served at 24 Discover Way, Cleveland, Georgia 30528. Hill is a co-founder and the Chief Executive Officer of the Studebaker enterprise and a director of the company.

10. Defendant Studebaker Defense Group, LLC ("SDG" or the "Company") is a Delaware limited liability company formed on February 9, 2017, with a principal office of record

at 202 Tribble Gap Road, Suite 300, Cumming, Georgia, and a letterhead address at 12020 Sunrise Valley Drive, Suite 100, Reston, Virginia. SDG has transacted business under the names "Studebaker Defense Group" and "Studebaker Group" interchangeably. SDG's Georgia registration was revoked on September 13, 2024, and it has no registered agent of record. SDG may be served through William Glenn Hill, Jr., its Chief Executive Officer, at 24 Discover Way, Cleveland, Georgia 30528.

11. Marx and Hill (together, the "Individual Defendants") are members, managers, officers, or controlling principals of SDG, and each exercised control over the Company's operations, finances, and disposition of assets during the relevant period.

**JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Tripwire is a limited liability company, and each of its members is a citizen of the State of Delaware. Marx and Hill are citizens of the State of Georgia. SDG is a limited liability company, and on information and belief each of its members is a citizen of the State of Georgia. No member of Tripwire is a citizen of the State of Georgia, and no Defendant, and no member of SDG, is a citizen of the State of Delaware. Complete diversity of citizenship therefore exists, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Marx. Pennsylvania's long-arm statute authorizes jurisdiction over a nonresident to the fullest extent permitted by the Constitution of the United States. 42 Pa. C.S. § 5322(b). Marx purposefully directed the conduct underlying Count I at Pennsylvania. In January 2024 he solicited Tripwire, a Pennsylvania company, by email, negotiated with Tripwire's Pennsylvania principal, and executed and transmitted the Purchase Order to Tripwire in Pennsylvania, intending that Tripwire rely and act on his representations in

this Commonwealth. Tripwire did rely, and it sourced, staged, stored, insured, and guarded thousands of kilograms of regulated explosive material, and sustained the resulting injury, in Pennsylvania. Count I arises directly out of those Pennsylvania-directed contacts.

14. This Court has personal jurisdiction over Hill. Hill directed and controlled the Company's dealings with Tripwire, causing the Company to solicit and contract with a Pennsylvania counterparty, to accept the benefit of Tripwire's performance in Pennsylvania, and to litigate to judgment in this District under the name "Studebaker Group." He then participated in stripping the Company of its assets so that the resulting Pennsylvania Judgment could not be collected, causing further injury to Tripwire in Pennsylvania. The Company was served in this District, defaulted, and is bound by the Judgment. Because the Individual Defendants operated the Company as their alter ego, as alleged in Count II, the Company's amenability to suit in this District is imputed to them for the claims to enforce the Judgment. The exercise of jurisdiction over each Defendant comports with due process and 42 Pa. C.S. § 5322.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here. Marx directed his solicitation and the Purchase Order to Tripwire in Pennsylvania, Tripwire relied and performed in Pennsylvania, and the breach and the resulting injury to Tripwire occurred in Pennsylvania. The Judgment that Counts II and III concern was entered in this District, which retained jurisdiction over it.

16. This Court also has authority under 28 U.S.C. §§ 2201 and 2202 to declare the rights and legal relations of the parties with respect to the judgment described below, an actual and justiciable controversy having arisen between the parties.

## FACTUAL ALLEGATIONS

### A. The Studebaker Enterprise

17. SDG holds itself out as a defense contractor supplying products to military and law-enforcement customers. Its leadership at all relevant times included Hill as co-founder and Chief Executive Officer, Marx as Chief Investment Officer, board member, and Group Executive Director.

18. The Company did not operate in the manner of a bona fide going concern. It transacted business through a ProtonMail email account rather than corporate channels. The Company used at least four different Virginia and Georgia addresses in its dealings, and it used the names "Studebaker Group" and "Studebaker Defense Group LLC" interchangeably on its contracts and correspondence.

**B. Marx Solicits Tripwire and Executes the Purchase Order**

19. On January 8 and 9, 2024, Marx solicited Tripwire by email to purchase MIL SPEC black powder, signing his messages "JOHANN MARX | BOARD MEMBER." True and correct copies of the January 2024 email communications are attached as Exhibit A.

20. In those messages, Marx asked whether Tripwire could "offer the full 35,000 kgs now" and pressed for immediate action, writing that the request was "urgent as we need to get it to the client today."

21. During the same negotiation, Studebaker personnel gave Tripwire's principal, Ryan Morris, verbal assurances that the order "would be the first of many."

22. On January 26, 2024, Marx executed Purchase Order No. SDGPO012524_240001504 (the "Purchase Order") on Company letterhead bearing the Reston address, signing as "Group Executive Director." A true and correct copy of the Purchase Order is attached as Exhibit B.

23. The Purchase Order committed the Company to purchase 5,000 kilograms of MIL SPEC black powder at $108 per kilogram, a total commitment of $540,000.

24. By its own terms, the Purchase Order required a deposit of fifty percent of the purchase price, $270,000, at signing.

25. Through the January 2024 communications and the Purchase Order, Marx represented to Tripwire that the Company intended to pay the $270,000 deposit at signing and the balance owed under the Purchase Order, that the Company had a downstream client whose urgent needs required immediate performance, that the Company intended a continuing course of purchases of up to 35,000 kilograms of which the Purchase Order would be the first, and that the Company was a going concern able to perform a $540,000 purchase.

## C. The Representations Were False, and Marx Knew It

26. When Marx made these representations, the Company had no intention of paying, and no ability to pay, the amounts it was promising.

27. Five months earlier, on August 14, 2023, the United States District Court for the Northern District of Georgia had entered a default judgment against the Company and Hill in Soluciones en Bastones S.A. de C.V. v. Studebaker Defense Group, LLC, No. 2:22-cv-00248 (N.D. Ga.), an action arising from the Company's acceptance of payment for 300,000 N95 masks it never delivered and never refunded. That judgment was unpaid when Marx signed the Purchase Order. It remains unpaid today.

28. By January 2024, the Company had also taken $500,000 wired by Integra Pharma Solutions, LLC for 180,000 boxes of nitrile gloves due in August 2020, and had neither delivered the goods nor returned the money, conduct described in litigation filed in Hillsborough County, Florida and in a public filing with the Securities and Exchange Commission.

29. At the same time, the Company, Hill, and Tom Marx were defending TBS Business Solutions USA, Inc. v. Studebaker Defense Group, LLC, No. 5:22-cv-00758-JGB (C.D. Cal.), a pending action alleging conversion and fraud arising from yet another prepaid transaction the Company never performed.

30. The Company's conduct under the Purchase Order confirms its state of mind at signing. The Company did not pay the $270,000 deposit due at signing. It did not pay any amount, ever. Within a short time after execution, it attempted to cancel the Purchase Order, although the Purchase Order contains no cancellation provision.

31. The representation of an urgent downstream client requiring same-day action was, at minimum, a materially misleading half-truth. It conveyed an imminent, funded resale that would assure payment, while concealing that the Company would not and could not pay even the deposit it was contemporaneously promising.

32. The representation that the order "would be the first of many," with interest in up to 35,000 kilograms, was made without any present intention that the Company would make such purchases, as demonstrated by the Company's failure to pay any amount on even the first order and by its contemporaneous financial condition.

33. As a board member, Chief Investment Officer, and Group Executive Director of the enterprise, Marx knew the Company's financial condition, knew of the unpaid Georgia judgment against the Company and its Chief Executive Officer, knew of the Integra taking, and knew of the pending TBS fraud action. His representations of the Company's intent and ability to pay were knowingly false when made, or were made with reckless disregard for their truth.

34. Marx made these representations to induce Tripwire to commit its capital, inventory, and regulatory capacity to the Company's order, and to do so immediately.

**D. Tripwire Performs - the Company Takes the Benefit and Walks**

35. Tripwire reasonably relied on Marx's representations. The representations came from a self-identified board member and executive director, in writing, on Company letterhead, in a signed purchase order with a deposit term. Nothing available to Tripwire disclosed the Company's existing default judgment, its prior takings, or its insolvency, and the Company's undisclosed use of interchangeable names and non-corporate channels concealed its true condition.

36. In reliance on the represented urgency, the represented downstream client, and the represented continuing course of purchases of up to 35,000 kilograms, Tripwire accelerated its procurement and committed to source quantities far beyond the 5,000 kilograms called for by the Purchase Order, ultimately acquiring and holding approximately 45,359 kilograms of black powder.

37. Tripwire incurred substantial costs in that effort, including acquisition costs paid to suppliers including Jacks Powder Keg and Bear River, together with freight, storage, security, insurance, and handling costs. Black powder is an explosive material regulated by federal law, and holding it imposes continuing, regulated storage and security burdens and costs.

38. The Company took the benefit of Tripwire's immediate performance and mobilization, then attempted to cancel, paid nothing, and disappeared into default.

39. Tripwire mitigated its losses. In January 2025, Tripwire liquidated 45,359 kilograms of black powder to STV Group at $57 per kilogram, a price far below both Tripwire's costs and the $108 per kilogram contract price.

**E. The Pennsylvania Action and the Unpaid Judgment**

40. On February 21, 2024, Tripwire filed a breach-of-contract action against its counterparty, under the counterparty's trade name "Studebaker Group," in the United States

District Court for the Middle District of Pennsylvania, No. 1:24-cv-00305-YK (the "Pennsylvania Action").

41. The defendant was served on March 4, 2024 by certified mail. It never appeared, never answered, and never defended.

42. The Clerk entered default on July 24, 2024. On December 15, 2024, the Honorable Yvette Kane granted Tripwire's motion for default judgment as unopposed and deferred entry of judgment pending an evidentiary hearing on damages. The court found the default willful and the product of the defendant's culpable conduct.

43. The court held the damages hearing on February 28, 2025. Ryan Morris testified, and Tripwire's damages expert submitted a report limited, by design, to losses on the 5,000 kilograms covered by the Purchase Order. The court found that Studebaker's assurances that the order would be the first of many induced Tripwire to procure far more product than the Purchase Order itself required.

44. On May 6, 2025, the court entered its Final Order awarding Tripwire $445,165.00, comprising $255,000 in lost profits, $157,165 in incremental expenses, and $33,000 in expert fees, denying attorney's fees, and retaining jurisdiction to enter further orders as necessary (the "Judgment"). A true and correct copy of the Final Order is attached as Exhibit C.

45. Because the expert's model was limited to the 5,000 kilograms covered by the Purchase Order, the Judgment does not compensate Tripwire for its losses on the remaining approximately 40,000 kilograms it was induced to procure and carry, nor for the storage, security, insurance, and handling costs the expert excluded from his model.

46. The Judgment is wholly unpaid. Post-judgment interest accrues by statute under 28 U.S.C. § 1961 from May 6, 2025.

47. On September 26, 2025, Tripwire's counsel sent a written demand, enclosing the default notice and the court's order directing payment, to General Wesley K. Clark, the chair of the Company's board of directors, by certified and first-class mail. No response and no payment followed.

**F. The Pattern: Five Takings, Two Personal Judgments**

48. Tripwire's experience was not an isolated commercial failure. It was the fifth known iteration of the same scheme conducted through the Company since 2020.

49. First, per a public SEC filing, Integra Pharma Solutions, LLC wired the Company $500,000 in 2020 for 180,000 boxes of nitrile gloves. The Company never delivered and never refunded, and Integra sued in Hillsborough County, Florida.

50. Second, Honeywell Safety Products USA, Inc. sued the Company in the Southern District of New York, No. 1:21-cv-07484, in September 2021, in a commercial dispute arising in the same period.

51. Third, Soluciones en Bastones S.A. de C.V. paid the Company for 300,000 N95 masks that were never delivered and never refunded, and obtained a default judgment against the Company and Hill in the Northern District of Georgia on August 14, 2023, registered in the Southern District of New York on August 12, 2024, No. 1:24-mc-00372. That judgment totals $10,013,459.81 on its face, comprising $1,913,459.81 in compensatory damages, prejudgment interest, attorney's fees, and costs, $600,000 in consequential damages, and $7,500,000 in punitive damages. It remains unpaid.

52. Fourth, on November 1, 2024, a unanimous California jury found the Company, Hill, and Tom Marx liable to TBS Business Solutions USA, Inc. for conversion, receipt of stolen property under California Penal Code § 496, intentional misrepresentation, negligent

misrepresentation, false promise, and concealment. On December 13, 2024, the court entered judgment of $4,051,250, comprising $1,157,500 in actual damages and $2,893,750 in punitive damages, against the Company, Hill, and Tom Marx jointly and severally, together with a separate judgment of $2,078,976 against the Company on contract theories. True and correct copies of the TBS judgments are attached as Exhibit D.

53. Fifth, Tripwire. Each iteration follows the same structure. The Company, through its principals, commits by interstate wire to pay for goods or accepts payment for goods, takes the counterparty's money or performance, delivers nothing or pays nothing, offers no refund, and defaults or litigates to judgment with no intention of paying.

54. The prior and contemporaneous takings bear directly on the Individual Defendants' intent, knowledge, plan, and absence of mistake in the Tripwire transaction.

## G. The Insiders Hollow Out the Judgment Debtor

55. While Tripwire's suit was pending, the Company shed the basic machinery of corporate existence. Its Georgia registered agent resigned effective August 17, 2023, and a further agent resignation was filed on December 11, 2023. Georgia issued a notice of administrative dissolution on June 14, 2024 and revoked the Company's registration on September 13, 2024, leaving the Company with no agent of record in that state.

56. In December 2025, in the Soluciones enforcement proceedings, the United States District Court for the Northern District of Georgia converted an earlier temporary restraining order into a preliminary injunction against Hill, the Company, and more than two dozen affiliated entities found to be operated as alter egos under Hill's control. A true and correct copy of the preliminary injunction order is attached as Exhibit E.

57. On evidence the court described as unrefuted, the court found a substantial likelihood that Hill and the affiliated entities engaged in fraudulent asset transfers, including overseas transfers and cryptocurrency purchases, commingled funds among dozens of entities sharing a common brand identity, used corporate accounts to pay personal expenses, including credit card bills, auto loans, and personal insurance, dissipated corporate assets through insider transfers designed to leave the judgment debtor insolvent, and misappropriated business opportunities by diverting the Company's operations into new, nearly identical entities.

58. The court concluded that nearly every statutory badge of fraud under Georgia's Uniform Voidable Transactions Act was present, and it froze the covered accounts and assets.

59. The Company was insolvent no later than August 2023, when the Soluciones default judgment was entered, and its insolvency was confirmed at the moment of contracting with Tripwire by its inability to fund the $270,000 deposit its own Purchase Order promised at signing.

60. An entity that cannot fund the deposit it promises at signing, and transfers its assets to insiders and clone entities is not a company experiencing commercial difficulty. It is a liability sink being operated deliberately, for the benefit of the individuals who control it.

**H. Tripwire Could Not Reasonably Have Discovered the Fraud Before Late 2024**

61. Through the spring of 2024, the facts available to Tripwire showed a breach of contract. Its counterparty had attempted to cancel and had failed to pay.

62. The facts that transformed the breach into fraud, including the Company's present intent not to pay at signing, its concealed insolvency, its prior takings from Integra and Soluciones, the unpaid Georgia judgment against the Company and Hill, and the insiders' commingling and stripping of assets, were not known to Tripwire and were not reasonably discoverable by it when the misrepresentations were made or when the breach occurred.

63. The earliest objective indicators of fraud emerged in the fall of 2024, when Georgia revoked the Company's registration mid-litigation in September 2024 and when the TBS jury returned its unanimous verdict for intentional misrepresentation, false promise, and concealment on November 1, 2024, followed by entry of the personal judgments on December 13, 2024. The N.D. Ga. tracing findings and preliminary injunction followed in December 2025.

64. Tripwire exercised reasonable diligence throughout, prosecuting its contract action to judgment, commissioning a public-records investigation of the Company's principals in 2025, demanding payment from the Company's board in September 2025, and monitoring related dockets as they came to light.

65. Tripwire discovered the facts giving rise to its fraud claim, and could not through the exercise of due diligence reasonably have discovered them, earlier than September 2024.

## COUNT I

### Fraud in the Inducement
### (*Against Defendant Johann Marx*)

66. Tripwire realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

67. In the January 2024 emails and in the Purchase Order he signed, Marx personally represented that the Company intended and was able to pay the $270,000 deposit at signing and the balance of the $540,000 purchase price, that an urgent downstream client required immediate performance, that the Company was interested in "the full 35,000 kgs now," and that the Company was a going concern capable of performing. Those written representations were reinforced, during the negotiation Marx conducted, by the verbal assurance to Ryan Morris that the order would be the first of many.

68. Each representation was material. Each was false or materially misleading when made, as alleged above. Marx knew the representations were false, or made them with reckless disregard for their truth, given his positions as board member, Chief Investment Officer, and Group Executive Director, his execution of the Purchase Order containing the deposit term, and his knowledge of the Company's financial condition, existing unpaid judgment, and pending fraud litigation.

69. Marx made the representations with the intent that Tripwire rely on them by committing immediately to source, stage, store, and guard regulated explosive material for the Company's benefit, and by procuring quantities well beyond the Purchase Order in anticipation of the represented continuing purchases.

70. Tripwire justifiably relied on the representations, as alleged above, and its reliance proximately caused it substantial damages, including the unrecovered costs of acquiring, transporting, storing, insuring, securing, and handling approximately 45,359 kilograms of black

powder, offset only by the mitigation sale at $57 per kilogram in January 2025, and including losses on the approximately 40,000 kilograms and associated carrying costs that the Judgment in the Pennsylvania Action does not compensate.

71. To the extent the Judgment remains unsatisfied, Tripwire has also been damaged in the amount of its losses on the Purchase Order itself, which were proximately caused by the same fraud. Tripwire does not seek, and will credit against any recovery here, any amount actually collected on the Judgment, so that there is no double recovery.

72. Marx made the operative misrepresentations personally. He is liable for his own fraudulent conduct regardless of any corporate office he held and regardless of the fate of the entity for which he spoke.

73. Marx's conduct was willful, wanton, malicious, and undertaken in conscious disregard of Tripwire's rights, as part of a scheme that had already taken millions of dollars from other counterparties. Tripwire is entitled to punitive damages in an amount to be determined at trial.

74. As a direct and proximate result of Marx's fraud, Tripwire has been damaged in an amount to be established at trial, believed to exceed $1,000,000, exclusive of interest, costs, and punitive damages.

**COUNT II**

**Liability on the Judgment — Alter Ego / Piercing the Company Veil**
**(*Against Defendants Johann Marx and William Glenn Hill, Jr.*)**

75. Tripwire realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

76. Tripwire is the holder of the Judgment, a final judgment of this Court in the amount of $445,165.00, entered May 6, 2025 against Tripwire's contracting counterparty. The Judgment is wholly unpaid, and post-judgment interest continues to accrue under 28 U.S.C. § 1961.

77. At all relevant times, the Company and the Individual Defendants operated as a single economic entity, and the Company functioned as the instrumentality and alter ego of the Individual Defendants who controlled it.

78. The Company was grossly undercapitalized for the business it purported to conduct. It could not fund the $270,000 deposit its own Purchase Order promised at signing, and it was already in default on an unpaid federal judgment when it signed.

79. The Company's controlling principals commingled its funds with their own and with those of affiliated entities, used corporate accounts to pay personal expenses, including credit card bills, auto loans, and personal insurance, and moved corporate assets to insiders and affiliated entities for less than equivalent value, leaving the judgment debtor insolvent, as found by the United States District Court for the Northern District of Georgia on unrefuted evidence.

80. The Company disregarded the ordinary incidents of separate corporate existence. It transacted through a personal ProtonMail account, displayed no federal employer identification number in public records, shifted among at least four addresses, used the names "Studebaker Group" and "Studebaker Defense Group LLC" interchangeably, allowed its Georgia registration to be revoked mid-litigation, leaving no agent of record, and permitted its operations to be diverted into new, nearly identical entities sharing a common brand identity.

81. The Individual Defendants used this structure to take value from counterparties while rendering the Company judgment-proof. The enterprise has accumulated unpaid judgments across four states, including the Soluciones judgment of $10,013,459.81, the TBS judgments of

$4,051,250 and $2,078,976, and Tripwire's Judgment of $445,165, while its insiders stripped and diverted its assets.

82. Marx exercised control over the Company's transactions, committing it to a $540,000 purchase as Group Executive Director. Hill co-founded, led, and controlled the Company and the network of affiliated entities into which its assets and operations were diverted. Each Individual Defendant participated in, directed, or knowingly benefited from the conduct alleged above.

83. Honoring the Company's separate existence in these circumstances would sanction fraud and promote injustice. The corporate form has been used not to conduct legitimate business but to take counterparties' money and performance, evade the resulting judgments, and shield the individuals who profited.

84. The Court should disregard the Company's separate existence and hold the Individual Defendants jointly and severally liable on the Judgment in the amount of $445,165.00, together with post-judgment interest accrued and accruing under 28 U.S.C. § 1961 from May 6, 2025, and the costs of enforcement.

## COUNT III

**Declaratory Judgment — Identity of the Judgment Debtor**
**(*Against All Defendants*)**

85. Tripwire realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

86. The Judgment names the debtor as "Studebaker Group." The contracting party on the Purchase Order attached to Tripwire's verified complaint in the Pennsylvania Action is Studebaker Defense Group, LLC, whose letterhead, Reston address, and personnel appear on the

face of the transaction documents. "Studebaker Group" is a trade name under which SDG conducted the transaction.

87. SDG is the entity that executed the Purchase Order, received service in the Pennsylvania Action, defaulted, and is identified in the Judgment as "Studebaker Group."

88. An actual controversy exists between Tripwire and the Defendants concerning whether SDG is the judgment debtor bound by the Judgment and whether the Individual Defendants, as its alter egos, are likewise bound.

89. Tripwire is entitled to a declaration that Studebaker Defense Group, LLC, also known as Studebaker Group, is the judgment debtor identified in the Judgment and is bound by it, and that any Defendant found to be its alter ego is jointly and severally liable for it. Tripwire seeks this declaration in aid of, and without displacing, the retained jurisdiction of this Court in Tripwire South, LLC v. Studebaker Group, No. 1:24-cv-00305-YK, where a motion to conform the caption of the Judgment is contemplated or pending.

## PRAYER FOR RELIEF

WHEREFORE, Tripwire respectfully requests that the Court enter judgment in its favor and against the Defendants as follows:

(a) On Count I, against Marx, compensatory damages in an amount to be established at trial, believed to exceed $1,000,000, exclusive of interest and costs;

(b) On Count I, against Marx, punitive damages in an amount to be determined at trial;

(c) On Count II, against Marx and Hill, jointly and severally, the amount of the Judgment, $445,165.00, together with post-judgment interest under 28 U.S.C. § 1961 from May 6, 2025;

(d) On Count III, the declarations described above;

(e) Pre-judgment and post-judgment interest as allowed by law;

(f) Costs of suit; and

(g) Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Tripwire demands a trial by jury on all issues so triable.

Respectfully submitted,

**DAVIS BUCCO & MAKARA**

By: __*David S. Makara*___________

Paul A. Bucco, Esquire (PA 52561)
David S. Makara, Esquire (PA78241)
Nolan M. Finnerty, Esquire (PA 329864)
10 East 6th Avenue, Suite 100
Conshohocken, PA 19428
(610) 238-0880 | Fax (610) 238-0244
*Attorneys for Plaintiff,*
*Tripwire South, LLC*

Dated: August 18, 2026